FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 16, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER L. W., | No. 2:18-cv-00094-SAB |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S** |
| COMMISSIONER OF SOCIAL | **MOTION FOR SUMMARY** |
| SECURITY, | **JUDGMENT** |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 and 13. The motions were heard without oral argument. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's motion, and remands for an award of benefits.

## JURISDICTION

On May 7, 2009, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability beginning September 6, 2007. The claim was denied initially on July 24, 2009, and upon reconsideration on December 2, 2009. Thereafter, Plaintiff filed a written request for a hearing on December 9, 2009.

A hearing was held on August 6, 2010 before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at the hearing, and Sharon Welter, an

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 1**

impartial vocational expert, also appeared and testified. Plaintiff was represented at the hearing by his attorney, Dana C. Madsen.

The ALJ issued an unfavorable decision[1] on August 20, 2010. Plaintiff requested a review of the decision by the Appeals Council on September 2, 2010. The Appeals Council denied Plaintiff's request for review on August 19, 2011.

Plaintiff filed an appeal to the United States District Court for the Eastern District of Washington on October 11, 2011. No. 2:11-cv-00387-CI. On May 30, 2013, United States Magistrate Judge Cynthia Imbrogno issued an order remanding the case for additional proceedings, concluding that the ALJ's findings were not supported by substantial evidence in the record and based upon legal error. AR 459-61.

---

[1] The ALJ at Plaintiff's first hearing found Plaintiff had the following severe impairments: depressive disorder; pain disorder associated with psychological factors and a general medical condition; alcohol dependence; herpes simplex; and shingles. AR 15. The ALJ concluded Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff's ability to climb ladders, rope and scaffolds is limited to occasional; whereas, climbing ramps, climbing stairs, balancing, stooping, crouching, kneeling and crawling are frequent. Plaintiff should also avoid unprotected heights and the use of moving machinery. Moreover, Plaintiff can understand and perform simple, routine and repetitive tasks, some well-learned detailed tasks with no fast-paced production requirements. Plaintiff is limited to occasional decision-making and changes in the work setting. Plaintiff should only have occasional interaction with the public and co-workers. AR 18. The ALJ at Plaintiff's first hearing concluded Plaintiff could perform past relevant work as a van driver, thus finding Plaintiff not disabled. AR 22-23.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 2**

On September 19, 2013, the Appeals Council issued an Order of Remand. A hearing on remand was held on November 24, 2014 before a differnt ALJ. AR 323. Plaintiff appeared and testified at the hearing, and Donna Veraldi, Ph.D., an impartial psychologist medical expert, also appeared and testified by telephone. Plaintiff was represented at the hearing by Dana C. Madsen.

The ALJ issued an unfavorable decision[2] on January 8, 2015. AR 496. Plaintiff requested a review of the decision by the Appeals Council. On August 28, 2015, the Appeals Council issued an order remanding the case back to an ALJ. AR 514-15. The Appeals Council found the ALJ failed to properly define Plaintiff's residual functional capacity. AR 516. Additionally, the Appeals Council found the ALJ improperly weighed the medical opinion evidence. *Id.* More specifically, the ALJ gave significant weight to the opinion of a psychological expert who testified outside of the scope of her expertise. AR 516-17. The Appeals Council remanded the case back to the ALJ so that the ALJ could (1) give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue, and to provide rationale with specific references to evidence of record in support

---

[2] The ALJ at Plaintiff's second hearing found Plaintiff had the following severe impairments: depressive disorder NOS, alcohol abuse, and pain disorder associated with psychological factors and a general medical condition. AR 501. The ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following mental non-exertional limitations: he could do simple routine work with more detailed work instructions. He could work with the general public and co-workers, but do no high pressure, high stress type jobs. AR 504. The ALJ at Plaintiff's second hearing found Plaintiff could perform past relevant work as a sales clerk, thus finding Plaintiff no disabled. AR 508-09.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 3**

of assessed limitations; and (2) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. *Id*.

A hearing on remand was held on April 12, 2016, before the same ALJ. Plaintiff appeared and testified at the hearing, and Nancy Winfrey, Ph.D., an impartial psychologist medical expert, also appeared and testified by telephone. Plaintiff was represented at the hearing by Dana C. Madsen.

The ALJ issued yet another unfavorable decision[3] on May 10, 2016. Plaintiff timely requested review of the decision by the Appeals Council. On September 9, 2016, the Appeals Council, again, issued an order remanding the case back to an ALJ. The Appeals Council found the ALJ's findings were inconsistent the proffered residual functional assessment. AR 539. The ALJ found Plaintiff had a severe impairment of trigeminal neuralgia, but concluded that Plaintiff could perform work at all exertional and non-exertional levels. *Id*. The Appeals Council found this conclusion made no sense, as it "plainly contradicts the finding that [Plaintiff's] trigeminal neuralgia is a severe impairment." *Id*. The Appeals Council remanded the case to another ALJ. *Id*.

A hearing on remand was held on January 26, 2017, before an ALJ. Plaintiff appeared and testified at the hearing. Also appearing and testifying at the hearing were Marian F. Martin, Ph.D., an impartial medical expert, and K. Diane Kramer, an impartial vocational expert. Plaintiff was represented at the hearing by Dana C. Madsen.

_____

[3] The ALJ at Plaintiff's third hearing found Plaintiff had the following severe impairment: trigeminal neuralgia. AR 524. The ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional and non-exertional levels. AR 526. The ALJ concluded Plaintiff could perform past relevant work as a retail business owner and retail sales manager, thus finding Plaintiff not disabled. AR 528-30.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 4**

The ALJ issued an unfavorable decision on February 24, 2017. The Appeals Council denied Plaintiff's request for review on January 13, 2018.

Plaintiff filed a timely appeal to the United States District Court for the Eastern District of Washington on March 14, 2018. This matter is before this Court under 42 U.S.C. § 405(g).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

At step one, the ALJ must determine whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 404.1572. If the individual is engaged in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has a severe medically determinable impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 5**

activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the ALJ finds the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to step three.

At step three, the ALJ must determine whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525; 20 C.F.R. § 404. Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. If not, the ALJ proceeds to the fourth step.

Before considering step four, the ALJ must determine the claimant's "residual functional capacity." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3).

At step four, the ALJ must determine whether the claimant's residual functioning capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, he or she is not disabled. If the ALJ finds the claimant cannot perform past relevant work, the analysis proceeds to the fifth step.

At step five, the burden shifts to the Commissioner to prove the claimant is able to perform other work in the national economy, taking into account claimant's age, education, work experience, and residual functioning capacity. 20 C.F.R. § 404.1520(g). To meet this burden, the Commissioner must establish (1) the claimant is capable of performing other work; and (2) such work exists in

significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

//

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized here.

Plaintiff was 57 years old at the time of the alleged disability onset date of September 6, 2007. He has a high school education and completed five years of college. Plaintiff has past relevant work experience as a sales manager.

Plaintiff testified that, in 2006, he developed a shingles outbreak on the right side of his face. Plaintiff claims that he developed significant pain in the trigeminal nerve on the right side of his face, around his jaw, ear, and temple. He describes the pain as greater than what someone would experience with an abscess tooth, and something worse than a migraine headache. Plaintiff stopped working on September 6, 2007, because he could no longer take the pain.

Plaintiff testified experiencing up to four episodes of high pain every day. Plaintiff claims that these episodes last from five to twenty minutes. During each episode of pain, Plaintiff has to sit still in a silent place and press his finger on the nerve in front of his ear for fifteen minutes to an hour. AR 390-94.

Plaintiff also described how these episodes of pain impact his ability to engage in daily activities. For example, Plaintiff states that the pain forces him to take frequent breaks from whatever he is doing. "If I'm doing things around the house … I try to take breaks every half an hour to 45 minutes and just sit and be very quiet." AR 43. Plaintiff testified that he has to take a fifteen to twenty-minute rest-break every thirty to forty-five minutes. AR 44. Plaintiff states that he has learned to manage his pain by "working at a slow pace and for no more than 45 minutes at a time." AR 175.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 7**

1  //

2  //

3  //

4                    **THE ALJ'S FINDINGS**

5       **At step one**, the ALJ found Plaintiff was not engaged in substantial gainful

6  activity during the period from his alleged onset date of September 6, 2007

7  through his date last insured of December 31, 2012.

8       **At step two**, the ALJ found Plaintiff had the following severe impairments:

9  trigeminal neuralgia; depressive disorder; and somatoform disorder.

10      **At step three**, the ALJ found that Plaintiff's impairments or combination of

11 impairments do not meet or medically equal any of the listed impairments in the

12 Listings.

13      Before reaching step four, the ALJ found Plaintiff had the Residual

14 Functional Capacity (RFC):

15
16     To perform medium work as defined in 20 C.F.R. § 404.1567(c). In
       addition, the claimant had to avoid exposure to extreme temperatures and to
17     extreme wetness and humidity. He could have no more than occasional
       exposure to irritants or chemicals. He had to also avoid moving or
18     dangerous machinery and work at unprotected heights. The claimant was
19     limited to work in a low stress environment which does not requires the
       worker to cope with work related circumstances that could be dangerous to
20     the work or others. He could perform simple, routine, and repetitive tasks.
21     He could have no more than occasional interaction with the public, co-
       workers, and supervisors. Finally, the claimant was unable to work at a
22     production pace.

23
24      **At step four**, the ALJ found Plaintiff was unable to perform any past

25 relevant work.

26      **At step five**, the ALJ asked the impartial vocational expert whether jobs

27 existed in the national economy for an individual with the Plaintiff's age,

28 education, work experience, and residual functional capacity. The vocational

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ^ 8**

expert testified that, given all of these factors, the individual would be able to perform the requirement of representative occupations, such as a stock selector; laundry worker; and lab equipment cleaner. Jobs that exist in significant numbers in the national economy.

As a result, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act.

## STANDARD OF REVIEW

The Commissioner's determination will be set aside only when the ALJ's finding are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla,' *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019. A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 9**

A district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The burden of showing an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## ISSUES FOR REVIEW

(1) Did the ALJ Improperly Reject Plaintiff's Subjective Complaints?

(2) Did the ALJ Fail to Properly Consider and Weigh the Medical Opinion Evidence?

(3) Has Plaintiff Established Reversible Harmful Error?

(4) Has Plaintiff Established that a Remand for a Finding of Disability or Further Proceedings is Warranted?

## DISCUSSION

### (1) The ALJ Failed to Provide Specific, Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Claims.

Plaintiff argues that the ALJ improperly discredited his testimony concerning the severity of his impairments. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this analysis, the claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of that symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 10**

"objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons to do so." *Id*. at 1281. This is not an easy standard to satisfy. "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin*, 278 F.3d 920, 924 (9th Cir. 2002).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms. AR 310. However, the ALJ rejected Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms because they were "not entirely consistent with the medical evidence *and other evidence in the record*[.]" *Id*. (emphasis added).

A review of the decision reveals that that ALJ made its adverse credibility determination for two reasons: (1) the objective medical evidence did not corroborate Plaintiff's symptom claims; and (2) Plaintiff's daily activities undermine his symptom claims. AR 310-11.

The parties appear to agree that the ALJ's first reason does not, on its own, satisfy the clear and convincing standard. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (holding that an ALJ may not discredit a claimant's testimony, regarding the severity of subjective symptoms, on the sole ground that it is not supported by objective medical evidence). Thus, the question becomes whether the ALJ's second reason, on its own or taken together with the first, offers a "specific, clear and convincing" reason for finding Plaintiff's symptom claims not credible. *Smolen*, 80 F.3d at 1281.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v.*

*Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A plaintiff's daily activities may also support an ALJ's adverse credibility determination "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The Ninth Circuit has made clear, however, that this line of reasoning has its limits. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Id*. Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [a claimant's] level of activity were inconsistent with [his] claimed limitations would those activities have any bearing on [his] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Fair*, 885 F.2d at 603 ("Many home activities are not easily transferable to …the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

In this case, the ALJ identified the following activities as inconsistent with his symptom claims:

[T]he claimant reported in 2009 that he was able to spend time researching music on the internet and that he played his guitar ten to fifteen times per day. In 2010, the claimant noted that he continued to play instruments, and that he also spent time making jewelry and doing photography. In terms of his social limitations, the claimant reported some difficulties with isolation. However, he was able to interact appropriately with his various healthcare treatment providers throughout the record. Additionally, in 2007, he reported that he resided with his two sons and that he spent time with other family members, including his mother and sister. He added that he spent time on Sunday evening attending live music at a local bar and that he was able to go shopping. By 2009, the claimant indicated that he was residing with his girlfriend and her son. He noted at that time that he was able to go ballroom dancing two or three times per week. These findings and activities are indicative of the claimant's ability to work in a low stress environment not a production pace preforming simple, routine, and repetitive tasks where

he had no more than occasional interaction with the public, co-workers, and supervisors, as provided in the residual functional capacity in this decision.

AR 311.

Plaintiff argues that these activities cannot serve as a clear and convincing reason for discrediting Plaintiff's testimony because they do not contradict his statements concerning the severity of his symptom claims. That is because Plaintiff experiences episodes of debilitating pain throughout the day. Plaintiff testified experiencing one to four episodes of pain every day. Plaintiff claims that these episodes last from five to twenty minutes. During each episode of pain, Plaintiff has to sit still in silence, and press his finger on the nerve in front of his ear for fifteen minutes to an hour. AR 390-94.

The Court agrees and finds the activities cited by the ALJ are not inconsistent with Plaintiff's claims of experiencing episodes of debilitating pain. *Reddick*, 157 F.3d at 722 ("[o]nly if [a claimant's] level of activity were inconsistent with [his] claimed limitations would those activities have any bearing on [his] credibility."). Indeed, Plaintiff described exactly how these episodes of pain impact his ability to engage in daily activities. For example, Plaintiff states that the pain forces him to take frequent breaks from whatever he is doing. "If I'm doing things around the house … I try to take breaks every half an hour to 45 minutes and just sit and be very quiet." AR 43. Plaintiff testified that he needs to take a fifteen to twenty-minute rest-break every thirty to forty-five minutes. AR 44.

And when an episode of pain is "really severe," Plaintiff "can't do anything." AR 46. "[A]ll I can do is just sit and press on this nerve right here on the side of my ear and try to and relieve the pain … And if I do that for a long period of time it'll eventually help it seems like." *Id*. Plaintiff states that he has

learned to manage his pain by "working at a slow pace and for no more than 45 minutes at a time." AR 175.

The ALJ fails to explain how Plaintiff's daily activities are inconsistent with his statement concerning the severity of his symptom claims. In fact, a review of the record shows Plaintiff's daily activities demonstrates his attempts to live a normal life, in light of his impairments. AR 175; *Garrison*, 759 F.3d at 1016 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). For that reason, the Court finds the ALJ's second reason does not satisfy the clear and convincing standard.

Therefore, the Court finds the ALJ erroneously discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments.

**(2) The ALJ Properly Weighed the Medical Opinion Evidence.**

Plaintiff also argues that the ALJ failed to properly consider and weigh the medical opinion evidence. "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In the absence of a contrary opinion, a treating physician's opinion may not be rejected unless "clear and convincing" reasons are provided. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is contradicted, it may be discounted only for " 'specific and legitimate reasons' supported by substantial evidence in the record." *Id*. at 830 (quoting *Murray v. Heckler*, 722 F.2s 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In this case, Plaintiff makes a general assertion that, "[i]nstead of relying on the opinions of the psychologists that evaluated [Plaintiff], the ALJ improperly

relied exclusively on non-examining sources." Plaintiff's Motion for Summary Judgment at 18.

**A. Andrew Peter Weir, M.D. AR 312.**

Consultative examiner, Andrew Peter Weir, M.D., performed a physical evaluation of Plaintiff in June 2009. AR 243-47. At the evaluation, Plaintiff advised Dr. Weir that he suffers from chronic pain on the right side of his face. He told Dr. Weir that the pain was so severe that he was unable to continue working. Plaintiff stated that the pain is aggravated by physical exertion and stress.

Plaintiff also described to Dr. Weir how the pain interferes with his daily life. Plaintiff stated that he is able to stay active as long as he does things very slowly. Plaintiff emphasized that any type of stress or physical exertion will cause the pain to increase and then he will suffer for several days afterward.

Dr. Weir opined that Plaintiff's ability to stand, walk, and sit throughout an eight-hour day is not restricted; he does not require the use of an assistive device; his ability to lift and/or carry is not restricted; his ability to engage in postural and manipulative activities is not restricted; and he is not limited in his ability to use his hands for grasping and manipulating or for fine and dexterous movements. AR 247.

The ALJ gave Dr. Weir's opinion regarding Plaintiff's physical limitations little weight, finding that Dr. Weir did not adequately account for Plaintiff's complaints of pain, even though the objective findings of his evaluation were completely unremarkable. AR 312.

Plaintiff's motion for summary judgment suggests that the ALJ improperly discounted Dr. Weir's opinion as to Plaintiff's symptom claims. *See* Plaintiff's Motion for Summary Judgment at 17. However, nowhere in the report does Dr. Weir offer an opinion as to Plaintiff's allegations of pain. AR 243-47. In fact, contrary to Plaintiff's assertion, the ALJ discounted Dr. Weir's opinion precisely

because Dr. Weir did not adequately account for Plaintiff's subjective symptom claims. Thus, the Court finds no error.

**B. Joyce Everhart, Ph.D.**

Consultative examiner, Joyce Everhart, Ph.D., performed a psychological evaluation of Plaintiff in June 2009. AR 248-52. Dr. Everhart's report states that "[b]ased on [Plaintiff's] perception of pain level, he may have difficulty with persistence during a regular forty-hour work week." AR 252.

The ALJ reviewed Dr. Everhart's report and gave partial weight to her opinion regarding Plaintiff's cognitive limitations, finding that it was inconsistent with other findings in Dr. Everhart's report. *See Bayliss v. Barhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that internal inconsistencies between the examiner's report and his opinion serves as a proper reason for discrediting an examiner's opinion). For example, Dr. Everhart's evaluation revealed that Plaintiff had been able to complete serial seven subtractions and that he was able to spell the word "world" both forward and backward. AR 250. The results of the trail making exercise also indicated no deficits in executive functioning. AR 251. Additionally, the ALJ found that Plaintiff reported engaging in daily activities which include driving a car, doing household chores, and ballroom dancing two or three times a week. AR 252. The ALJ found these daily activities indicated Plaintiff was able to persist in tasks. *Id*. Nonetheless, the ALJ limited Plaintiff to low stress work not requiring a production pace to account for any limitations in this area. *Id*.

The Court finds the ALJ offered specific and legitimate reasons for giving partial weight Dr. Everhart's opinions. *Bayliss*, 427 F.3d at 1216. The ALJ summarized Dr. Everhart's opinions; identified inconsistencies between her opinions and other findings in her evaluation; and explained why Dr. Everhart's opinions were undermined by these other findings. Thus, the Court finds no error.

**C. Dennis Pollack, Ph.D.**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 16**

Plaintiff also underwent a psychological evaluation in July 2010, with Dennis Pollack, Ph.D. AR 280-85. Dr. Pollack opined that Plaintiff has no limitations other than (1) marked difficulties in the ability to perform activities within a schedule, maintaining regular attendance, and be punctual within customary tolerances; and (2) marked difficulties in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 287.

Dr. Pollack summarized his report indicating that Plaintiff's "primary complaint is chronic pain resulting from shingles which centered in his trigeminal nerve. The shingles result in a chronic low level of pain 90% of the time. However, when there is a major pain outbreak during the day he cannot do anything because it is so distracting." AR 284.

The ALJ discredited Dr. Pollack's opinion because it was not consistent with the Dr. Pollack's other findings, including formal testing which revealed scores within the normal range. *See* AR 312. Moreover, the ALJ noted that Plaintiff advised Dr. Pollack that he had been able to travel out of state, that he was able to drive, that he was able to socialize and go dancing, and that he was able to care for himself and others. *Id*. The ALJ also noted that while Plaintiff endorsed significant limitations stemming from his pain complaints, the results of the MMPI[4] evaluation suggest that this stemmed from Plaintiff's psychological issues. *Id*.

---

[4] Dr. Pollack tested Plaintiff using the Minnesota Multiphasic Personality Inventory (MMPI) test. The results indicated that Plaintiff was being forthright and honest in his presentation of self. Additionally, his score profile reveals a person "who is in a great deal of physiology distress and is having difficulty adjusting psychologically. Such people lack stamina, feel weak, fatigued, tense

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 17**

The ALJ offered specific and legitimate reasons for discrediting Dr.

Pollack's opinion. *See Tommasetti v. Asrtue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

(holding that the existence of internal inconsistencies within a physician's opinion

constitutes a specific and legitimate reason for the ALJ to reject that opinion

concerning the claimant's functional limitations). The ALJ summarized Dr.

Pollack's opinions; identified inconsistencies between his opinion and other

findings in his report; and explained why these inconsistencies undermined Dr.

Pollack's conclusions. Thus, the Court finds no error.

**(3) The ALJ's Error was Harmful.**

As indicated above, the ALJ discredited Plaintiff's subjective symptom

claims for reasons that did not satisfy the clear and convincing standard. The

Court must now determine whether the ALJ's error was harmless. An error is

harmless if it is "inconsequential to the ultimate nondisability determination."

*Stout*, 454 F.3d at 1055. Plaintiff bears the burden of showing the ALJ's error was

harmful. *Shinseki*, 556 U.S. at 409-10.

The Court finds Plaintiff has made a showing that the ALJ's error was

harmful. At the hearing, the ALJ posed the following hypothetical to the

vocational expert:

> **ALJ**: Assume a person of the claimant's age, education, and work
> experience who can work at the light exertional level, which is lift up to 20
> pounds occasionally, lift and carry up to 10 pounds frequently, stand or
> walk four up to eight hours per eight-hour workday, and sit for up to six
> hours out of the workday, who would need to – let's see – need to avoid all
> exposure to extreme heat and extreme cold and extreme wetness and
> humidity and no more than occasional exposure to irritants such as fumes
> and odors and same thing for chemicals. And let's see – avoid all use of

and nervous much of the time. They tend to react to stress by developing physical

symptoms. They overreact to minor and normal physical changes with extreme

concern and complaint …" AR 283.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ^ 18**

moving or dangerous machinery and exposure to unprotected heights. And this person would need – well, let me look back here at something – I probably need to change this. Not to light, to medium exertional level.

**Vocational Expert**: Okay.

**ALJ**: So medium. Anyway lift up to 50 pounds occasionally, lift and carry up to 25 pounds frequently and as defined in the regulations, but specifically stand or walk for – be able to walk for a full – stand or walk for a full eight-hour shift. And this person would need to work in a – well, let me see here – work that consists of – or work in a low stress environment which does not require the worker to cope with work related circumstances that could be dangerous to the worker or others. And work that consists of no more than simple, routine, and repetitive tasks. And no more than occasional interaction with the public, coworkers, and supervisors. Could such a hypothetical person do the past job you identified as a sales manager?

**Vocational Expert**: No.

AR 445-46. The ALJ indicated that he needed to add "not at a production pace" to the hypothetical. AR 446. Based on the hypothetical, the vocational expert testified that the hypothetical individual could not perform the work of a sales manager, Plaintiff's past relevant work. *Id*. However, the vocational expert further testified that such a hypothetical individual could perform the job of stock selector, laundry worker II, and lab equipment cleaner. AR 447.

The ALJ then asked a second hypothetical:

**ALJ**: [A]ssume a person of the claimant's age, education, and work experience who could work again at the medium exertional level, but who due to a combination of medical conditions, pain, and mental impairments this person would be non-productive more than 20% of most days due to the necessity to take breaks in a quiet place during the workday. Could such a person maintain competitive employment?

**Vocational Expert**: No, not at all. And that response is based on my 27 years of vocational assessment.

AR 447-48. Plaintiff's counsel then asked the following hypothetical:

**Plaintiff's counsel**: On hypothetical 1 if we add that the person has to take breaks one to four times a day at unpredictable times and these breaks take 15 minutes and they can't do anything, they're just – push with their fingers on their trigeminal nerve one to four times a day. Would there be any work they could perform, unpredictable times?

**Vocational Expert**: No.

AR 448-49.

The vocational expert's response to Plaintiff's counsel's hypothetical shows that, had the ALJ's hypothetical included Plaintiff's subjective symptom claims, the vocational expert would have found that no jobs exist for an individual with Plaintiff's RFC. In other words, had the ALJ included this evidence in its RFC determination, the ALJ would not have satisfied its burden on step five of the sequential process and Plaintiff would have been found disabled. *See* 20 C.F.R. 404.1520(a)(4)(v).

The ALJ's reasons for omitting Plaintiff's subjective symptom claims from its hypothetical to the vocational expert were not valid. Thus, the ALJ's error was harmful.

**(4) Remedy.**

Having determined that the ALJ's error was harmful, the Court must now order an appropriate remedy. The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court may find that this occurs when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence;

(2) there are no outstanding issues that must be resolved before a determination of disability can be made; and

(3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292).

The Court finds that the evidence of Plaintiff's subjective symptom claims satisfies the standard above. First, the ALJ improperly discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments.

Second, there does not appear to be any outstanding issues that must be resolved before a determination of disability can be made.

And third, it is clear from the record that the ALJ would have been required to find Plaintiff disabled had it properly considered Plaintiff's subjective symptom claims. The ALJ's failure to properly consider Plaintiff's subjective symptom claims caused the ALJ to omit certain evidence from its RFC determination. This resulted in the ALJ offering the vocational expert an incomplete hypothetical. When the hypothetical included Plaintiff's subjective symptom claims, the ALJ would not have been able to satisfy its burden on step five of the sequential process. AR 448-49; 20 C.F.R. 404.1520(a)(4)(v). For these reasons, the Court credits Plaintiff's evidence concerning the intensity, persistence, and limiting effects of his impairments as true.

## CONCLUSION

The ALJ erroneously discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments. Had this evidence been properly credited, Plaintiff would have been found disabled. Consequently,

the proper remedy is to remand for a calculation and award of appropriate benefits. *Garrison*, 759 F.3d at 1019-20.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. The Decision of the Commissioner is **REVERSED** and **REMANDED** for a calculation and award of appropriate benefits.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 16th day of April 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ^ 22**